Estate of Nelson B. Updike, Deceased, James J. Fitzgerald, Jr. and Nelson B. Updike, Jr., Executors v. Commissioner.
Estate of Nelson B. Updike v. Commissioner
Docket No. 31819.
United States Tax Court
1952 Tax Ct. Memo LEXIS 232; 11 T.C.M. (CCH) 441; T.C.M. (RIA) 52130; May 5, 1952
*232 Charles A. Schorr, Esq., 810 Insurance Bldg., Omaha, Neb., and James W. B. Brown, Esq., for the petitioners. Frank Cavanaugh, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This proceeding involves an income tax deficiency of $2,777.11 in the tax liability of Nelson B. Updike, deceased, for the taxable year beginning January 1, 1948, and ending October 15, 1948, the date of decedent's death. The issues presented are whether respondent erred (1) in including as additional income of decedent for the taxable year, partnership income of $2,257.87, representing one half of the net income of a grain elevator business for the period from the beginning of its fiscal year on May 1, 1948, to date of decedent's death, and (2) in disallowing a claimed ordinary and necessary expense deduction of $1,416.72, representing the cost of replacement of the flooring in certain grain bins. Findings of Fact The petitioners, whose address is 810 Insurance Building, Omaha, Nebraska, are co-executors of the Estate of Nelson B. Updike, deceased, who died on October 15, 1948, a resident of Omaha, Nebraska. The petitioners executed the decedent's *233 final income tax return for the period January 1, 1948, to October 15, 1948, on the cash basis and filed it with the collector of internal revenue for the district of Nebraska. For many years prior to his death Nelson B. Updike engaged in numerous business activities, including ranching, livestock and grain. Over a period of years and at the time of his death Updike owned the controlling interest in the Platte Valley Land and Investment Company, a Nebraska corporation hereinafter referred to as Platte Valley. In 1946, when about 79 years of age, Updike purchased at an auction sale the Herman Ranch near Herman, Nebraska, comprising approximately 900 acres of land and numerous buildings including a residence and a grain elevator having thirteen bins and a total capacity of about 50,000 bushels. On February 6, 1947, Updike conveyed the Herman Ranch to Platte Valley in trust to manage the property, collect rents and other income, pay taxes and expenses of improvements and care of the property; to operate, run and cultivate the property and/or sell and convey the same at Updike's direction and to place the proceeds from the operation or sale to his credit on the books of Platte Valley *234 subject to his withdrawal; and further to reconvey the property to Updike upon his demand. In March 1947 Updike had a business conference with Audley Russell, who for many years had been the manager of grain elevators for the Farmers Grain and Livestock Elevator at Tekamah, Nebraska, and in that capacity made purchases and sales of grain. Updike and Russell came to an understanding as to the latter devoting his time and taking complete charge of the operation of a grain business using the elevator on the Herman Ranch. They also agreed that a partnership agreement should be entered into between Russell and Platte Valley so that, in the event of Updike's death, the partnership would continue so long as Platte Valley held the property. On April 3, 1947, Platte Valley and Russell executed a memorandum of agreement whereby it was agreed that Platte Valley would furnish the office and elevator, a house for Russell to live in, and pay Russell $150 per month salary which was not to be taken out of the business as an expense. Also, that the profits would be divided equally between Russell and Platte Valley after payment, out of the business, of all business expenses including insurance *235 and taxes on the buildings and contents and interest at four per cent on money advanced by Platte Valley. It was further agreed that if the Herman Ranch was sold Russell would receive one year's salary unless he made satisfactory arrangements with the new owner of the property. The understanding of the parties to that agreement was that the $150 per month salary was paid for Russell's services in generally looking after the farm, the care of the numerous buildings, weighing crops, etc. A letter from Platte Valley to Russell dated April 3, 1947 stated that the above mentioned agreement between them took care of the possibility of Updike's death. It further stated that incidental expenses would be paid from the business, but that major expenses or improvements on the elevator would be paid as agreed upon from time to time by the parties. The partnership under the name of Russell Elevator started business on a fiscal year basis beginning May 1, 1947. Russell operated the business of the purchase and sale and storage of grain; he maintained journal and ledger accounts of all expenses, employees' wages, costs and receipts; he maintained a record of all grain purchased and sold and an *236 inventory of grain on hand; and he rendered monthly profit and loss statements to Platte Valley. Russell maintained a bank account at the Herman State Bank in the name of Russell Elevator through which he made all deposits of receipts of the business and all disbursements pertaining thereto. The accounts and record of Russell Elevator were audited monthly by the Secretary of Platte Valley. During its first fiscal year, May 1, 1947 to April 30, 1948, Russell Elevator handled approximately 300,000 bushels of grain. The profits from the business were generally kept and used in the business, except when Russell needed money. On such occasions he drew checks payable in equal amounts to himself and Platte Valley, respectively. Platte Valley's 50 per cent share of the net profits of Russell Elevator were credited to Updike's account on its books. A partnership return of income for the fiscal year May 1, 1948 to April 30, 1948, was filed in the name of Russell Elevator reporting a net income of $15,029.19 and partners' shares thereof in the amounts of $7,514.59 to Audley Russell and $7,514.60 to N. B. Updike. The individual income tax return of Nelson B. Updike for the calendar year *237 1948 included in income, under schedule E, the amount of $7,514.60 from the partnership of Russell Elevator, Herman, Nebraska. Following the death of Updike on October 15, 1948, the Russell Elevator partnership continued without interruption or change as contemplated by the April 3, 1947 agreement between Russell and Platte Valley, until a sale was made of the Herman Ranch in 1949 at or about the end of Russell Elevator's fiscal year. A partnership return of income for the fiscal year May 1, 1948 to April 30, 1949, was filed in the name of Russell Elevator reporting a net income of $10,619.17 and partners' shares thereof in the amounts of $5,309.59 to Audley Russell and $5,309.58 to Estate of N. B. Updike. The fiduciary income tax return of the Estate of Nelson B. Updike, deceased, for the period October 15, 1948 to August 31, 1949, reported the amount of $5,309.58 as income from the partnership of Russell Elevator, Herman, Nebraska. In asserting the deficiency involved herein the respondent determined that one half of the partnership net income for the period from May 1, 1948 to October 15, 1948, the date of Updike's death, was includible in decedent's final income tax return. *238 During the taxable year involved herein four of the thirteen bins of the grain elevator on the Herman Ranch required a replacement of the floors thereof at a cost of $1,416.72. Those four bins were closest to the pit used in loading grain and thus in more constant use than the other bins. Patching the flooring of those four bins from both inside and outside did not keep the grain from leaking through. The back end of the old floors had an elevation of three feet over the front end which was not sufficient to let the grain run out without the aid of manual scooping or pushing. The new floors were of wood the same as the old floors but were installed with the back end having an elevation of six feet over the front end and also the corners of the bin were blocked or filled in so as to make the bottom of the bin a hopper to push the grain down to the bottom opening without manual labor. After the floor replacement the bins could not be used for any new purpose, but the replacement was constructed so as to provide more modern hoppered bin floors and greater efficiency in handling grain without manual labor. In asserting the deficiency involved herein the respondent disallowed a claimed *239 deduction of $1,416.72 as an ordinary and necessary expense and capitalized the cost of replacing the bin floors. Opinion The first issue, as presented on the pleadings, is whether the Russell Elevator partnership terminated at the date of Updike's death, so that there is includible in the decedent's final income tax return for 1948, one half of the partnership net income for its twelve months fiscal year ended April 30, 1948, as reported on the return, and in addition thereto one half of the partnership net income for a short taxable year (5 1/2 months) from May 1, 1948 to October 15, 1948, as determined by respondent. On brief respondent takes the position that if the partnership was between Russell and Platte Valley as contended by petitioners, then there remains no issue herein as to any termination of such partnership by reason of Updike's death. However, respondent argues that the entire arrangement with Russell was made with Updike personally and was essentially one of employment of Russell as a manager at a salary plus a percentage of profits. The facts do not support such argument. In February 1947 the Herman Ranch was conveyed to Platte Valley in trust to manage and *240 operate the property for the benefit of Updike. In April 1947 Platte Valley and Russell, and experienced grain operator, entered into a partnership agreement whereby Platte Valley contributed the use of the grain elevator and loans at four per cent interest and Russell contributed his experience and knowledge to engage in the business of buying and selling grain and to divide the net profits 50 per cent to Russell and 50 per cent to Platte Valley for the benefit of Updike. That agreement was carried out and as contemplated by the parties was continued in effect without any change or interruption because of Updike's death. On the facts we conclude that Updike was not a partner in the partnership of Russell Elevator which engaged in business throughout it fiscal year May 1, 1948 to April 30, 1949. Accordingly, we think that respondent now correctly takes the position that no issue remains as to any termination of the partnership by reason of Updike's death on October 15, 1948. The factual circumstances are determinative of the question presented and there is no need to cite or discuss various cases involving termination of a partnership by reason of the death of one of the partners. *241 [1] We hold that respondent erred in including in decedent's income for 1948, the amount of $2,257.87 representing one half of the Russell Elevator partnership income for the short period May 1, 1948 to October 15, 1948.
The second issue involves respondent's disallowance of a deduction claimed on decedent's final return for $1,416.72 expended in replacing the flooring in four bins in the grain elevator used in the Russell Elevator business. The cost of such replacement was not charged as an expense of that business, but was treated by the parties as falling into the category of a major improvement. Entirely aside from any speculation as to whether the decedent individually, or Platte Valley as trustee, made the improvement, we conclude on this record that the replacement was of such a character as to be a permanent *242 modernization of the bins and a capital improvement having a useful life of several years duration. We sustain the respondent's disallowance of the claimed deduction. Decision will be entered under Rule 50. Footnotes
1. See , reversing , , affirmed ; ; and , reversed C.C.A. 2, April 14, 1952.↩